**William J. NETZ, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C5–86–699.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Denied Oct. 17, 1986.

C. Paul Jones, Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ., with oral argument waived.

### OPINION

CRIPPEN, Judge.

Appellant contends that the receipt by the police of his statement and his consent for an ensuing search were the fruit of

illegal police conduct and therefore inadmissible as evidence against appellant. Because we find the statement and the search were not the fruit of illegal conduct, we affirm the trial court.

### FACTS

In March 1984, the Minneapolis home of Herbert and Helen Pearson was burglarized. One month later, the Brooklyn Park home of James and Darlene Smith was burglarized. The burglar took, among other property, a check payable to James Smith.

On May 14, 1984, Mary Durand cashed James Smith's check at the Union Liquor Store in Minneapolis. When the liquor store personnel discovered that the check had been forged, they called the police. The police commenced an investigation, discovered Durand had passed the check, and obtained her address. On May 17, police officers went to this address.

Mary Durand lived in the top half of a duplex. At the front of the duplex is a screen porch. As the police were walking towards the door of the duplex they noticed a man, whom police later discovered to be appellant, standing on the screen porch. Police knocked on the door of the duplex, received no response, and opened the door which, the police discovered, led to an ascending staircase. They climbed the stairs, which led to the living room door. The living room door was standing open. The officers called "Police," but received no response. The police entered the apartment without a warrant.

Once inside, the officers first discovered an identification card with Durand's name on it and two watches. They also found other property that they suspected was taken in the same burglary in which James Smith's check was taken. The officers called Brooklyn Park Police and then waited for an officer to arrive who would examine the property.

While waiting, the police heard footsteps on the stairs. They looked down the stairs and saw appellant going out the door. The officers descended the staircase and found appellant sitting on the front steps. They confronted appellant and, having seen him on the screen porch, asked him why he had left when they first arrived. Appellant said he knew the police wanted to discuss the stolen check and that he did not want to be bothered. Appellant identified himself and admitted stealing the check. He said he lived in the apartment with Durand and agreed to accompany the officers to the apartment. Once in the apartment, the officers handcuffed appellant to a chair and gave him a *Miranda* warning. He then told the officers that he and Durand had burglarized the Smith home. The Brooklyn Park police soon arrived, gave appellant another *Miranda* warning, and questioned him further about the Smith burglary and other burglaries.

The police seized stolen goods from the apartment as they were identified by appellant and then took appellant to Hennepin County Jail. The police later recovered a television and a diamond ring from a pawn shop, a home computer from a home in Crystal, and other items seized in a warranted search of Durand's apartment.

Appellant was charged with the Smith burglary and with the Pearson burglary. At an omnibus hearing, appellant moved for the suppression of his statement to the police and the evidence seized, claiming the police had violated his fourth amendment rights. The trial court denied the motion. Later, the trial court determined that the initial entry into the apartment by the police was improper but that the subsequent entry and questioning of appellant was proper. The trial court determined that the questioning of appellant, reentry into the apartment, and seizing of stolen goods were not the fruit of the earlier improper conduct. Therefore, appellant's statements and the goods seized were admitted as evidence against him.

Appellant was convicted of the two burglaries and sentenced to concurrent terms of 23 months and 27 months. He petitioned for post-conviction relief, claiming his fourth amendment rights had been vio-

lated. The post-conviction court denied the relief. This appeal followed.

## ISSUE

Was appellant's confession and the evidence seized in the consent search tainted by improper police conduct and therefore inadmissible?

## ANALYSIS

 The exclusionary rule will prevent the admission at trial of any evidence obtained by the police in derogation of an accused's constitutional rights. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). The exclusionary rule also applies to any evidence obtained as the fruit of any improper police conduct. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963) ("fruit of the poisonous tree" doctrine). In determining whether evidence is the fruit of improper governmental conduct, the court must decide whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417. So long as there is a sufficiently remote connection between the improper conduct and the challenged evidence, the evidence will be deemed untainted and will be admissible. *Id.* at 487, 83 S.Ct. at 417.

 We agree with the trial court that there was a tenuous link between the initial illegal police conduct and applicant's statement and consent for a search. We find, as the Supreme Court did in *Wong Sun,* that the tenuous connection between the two renders proper the statement and search and that the statement and fruits of the search were properly admitted against appellant.

## DECISION

Appellant's confession and the evidence police seized in appellant's apartment were not tainted by improper police conduct.

Therefore, they were properly admitted against him.

Affirmed.